**SIGNED THIS: January 23, 2017**

_____
                    **Mary P. Gorman**
                    **United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 14-91293 |
| BLAIR M. MINTON, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| BMA VENTURES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 15-09033 |
| | ) | |
| ROGER L. PRILLAMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

Before the Court is a Motion for Summary Judgment filed by BMA Ventures,

LLC, seeking a determination that its Operating Agreement is an executory contract that has been rejected by operation of law or, in the alternative, a ruling that the Chapter 7 Trustee is bound by all provisions of the Operating Agreement. For the reasons set forth below, BMA Ventures' motion will be denied in its entirety.

## I. Factual and Procedural Background

Blair Minton ("Debtor") filed a Chapter 7 bankruptcy petition on November 10, 2014. Roger L. Prillaman ("Trustee") was appointed the trustee of the Debtor's bankruptcy estate. On his Schedule B - Personal Property, the Debtor listed a variety of investments including a 20% interest in BMA Ventures, LLC ("BMA Ventures"), which he described as having an ownership interest in assisted living communities. BMA Ventures is a multi-member Illinois Limited Liability Company ("LLC") with nine members, including the Debtor. The Debtor was the initial manager of BMA Ventures. Two other members were named as additional managers in 2011, and the Debtor was removed as a manager in 2012.

After it was organized, BMA Ventures adopted its Operating Agreement, which governs the management of the company and the relationship between it and its members. The Operating Agreement outlines how profits and losses are allocated among members and includes limitations on members' disposition of their interests in BMA Ventures. Among those limitations is a right of first refusal; if a member wishes to sell his interest in BMA Ventures to a third party, BMA Ventures has a 60-day option period during which it can choose to purchase the interest on the same terms as the third party. In the event BMA Ventures declines

to make the purchase, the initial 60-day option period is followed by a 15-day option period for other members to purchase the interest. The Operating Agreement also provides mechanisms to ensure that proposed sales are for fair market value.

In September 2015, BMA Ventures filed a three-count complaint for declaratory judgment against the Trustee. Count I asserts that the Operating Agreement is an executory contract subject to §365 of the Bankruptcy Code. Count II seeks a declaration that the Operating Agreement was rejected pursuant to §365(d)(1) because the Trustee did not affirmatively assume it within 60 days of the filing of the Debtor's bankruptcy petition. In the alternative, Count III asks the Court to find that the sale restrictions in the Operating Agreement are binding on the Trustee. BMA Ventures filed its Motion for Summary Judgment, seeking judgment in its favor on either Counts I and II or on Count III. The motion has been fully briefed and is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters concerning the assumption or rejection of executory contracts and the administration of property of the estate are core proceedings. *See* 28 U.S.C. §157(b)(2)(A), (O). This matter arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code, and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S.

462, 499 (2011). In their joint pre-trial statement, filed January 25, 2016, both parties, through their attorneys, consented to the entry of final orders by this Court. *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1948 (2015). As discussed in greater detail below, however, Count III of BMA Ventures' complaint does not present a case or controversy that is justiciable at this time.

## III. Analysis

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a), as made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides, in pertinent part: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. Summary judgment is an encouraged method of resolving issues where no material facts are in dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

In evaluating a motion for summary judgment, a court does not weigh evidence, but rather determines whether there is a genuine issue of disputed material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The movant bears the burden of establishing that no genuinely disputed issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). Once the movant meets that burden, the opposing party must offer specific facts to show that any claimed factual dispute is genuine. *Anderson*, 477 U.S. at 250. The opposing party must show more than some "metaphysical doubt" about the material facts; speculation, bare conclusions, and flat denials

-4-

are insufficient to raise a genuine factual issue. *Matsushita*, 475 U.S. at 586; *Roger Whitmore's Auto. Servs., Inc. v. Lake County*, 424 F.3d 659, 669 (7th Cir. 2005). Once it has been established that no genuinely disputed issue of fact exists, the movant must then show that controlling substantive law supports entry of judgment in its favor. *See ANR Advance Transp. Co. v. Int'l Brotherhood of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

Here, no material issue of fact is in dispute. The copy of the Operating Agreement attached to the complaint is admittedly the current, controlling document. It is also admitted that the Debtor owned a 20% membership interest in BMA Ventures at the time of his bankruptcy filing and that he had been removed as a manager of BMA Ventures approximately two years before the filing. Because the only disputes presented are matters of law rather than fact, summary judgment could be appropriate. But, for the reasons set forth below, controlling law does not support granting BMA Ventures the relief it requests and its motion must therefore be denied notwithstanding the lack of any factual dispute.

### B. LLC Interests and Rejection of Operating Agreements Generally

Before reaching the merits of BMA Ventures' motion, a brief discussion of Illinois LLCs, the function of LLC operating agreements, and the effect of rejection under §365 of the Bankruptcy Code on LLC operating agreements is warranted. BMA Ventures' unstated premise underlying Counts I and II appears to be that, if the Operating Agreement is rejected, the Debtor's bankruptcy estate would no

longer have an interest in BMA Ventures. As explained below, that is an inaccurate interpretation of both Illinois law and the Bankruptcy Code.

An LLC is a statutorily-created business entity that, in Illinois, is governed by the Illinois Limited Liability Company Act ("LLC Act"), 805 ILCS 180/1-1 to 60-1.[1] The LLC Act provides that an LLC is created by the filing of articles of organization with the Illinois Secretary of State. 805 ILCS 180/5-1, 5-40. The articles of organization consist of a simple form requiring little more than the name and address of the LLC, the purpose for organizing the LLC, and the identity of the members or managers of the LLC. 805 ILCS 180/5-5(a). Each member of an LLC has a distributional interest in the LLC—the right to a share of the LLC's profits and assets—which is defined as transferrable personal property. 805 ILCS 180/1-5, 30-1(b).

The LLC Act includes default rules for the governance of LLCs. For example, in a member-managed LLC, "each member has equal rights in the management and conduct of the company's business" and "any matter relating to the business of the company may be decided by a majority of the members[,]" except for certain actions requiring unanimous consent of all members. 805 ILCS 180/15-1. A person who holds an interest in the LLC may be admitted as a member with the

---

[1] The Illinois General Assembly recently enacted comprehensive amendments to the LLC Act. *See* 2016 Ill. Legis. Serv. P.A. 99-637 (H.B. 4361). Because the amendments do not take effect until July 1, 2017, only the current version of the LLC Act will be discussed.

unanimous consent of the existing members of the LLC. 805 ILCS 180/10-1. A transferee of a distributional interest in the LLC is entitled to all distributions to which the transferor was entitled even if not admitted as a member. 805 ILCS 180/30-10. Distributions made to LLC members prior to dissolution must be in "equal shares." 805 ILCS 180/25-1(a). After dissolution and payment of all of an LLC's debts, capital contributions are repaid first and any remaining assets are distributed in equal shares. 805 ILCS 180/35-10(b).

Most of the default rules in the LLC Act, however, including those described above, may be modified with the adoption of an operating agreement. 805 ILCS 180/15-5. An operating agreement is a document adopted by the members of an LLC, separate from the articles of organization, that is designed to "regulate the affairs of the company and the conduct of its business and to govern relations among the members, managers, and company." 805 ILCS 180/15-5(a). Illinois law does not require that LLCs adopt operating agreements.

BMA Ventures' Operating Agreement supplants many of the LLC Act's default rules. Day-to-day management of BMA Ventures is vested in a number of managers who are selected by the members. A schedule attached to the Operating Agreement specifies the percentage interest that each of the nine members holds in BMA Ventures. Distributions to members are made pro rata based on each member's proportional interest. In the event of any proposed sale of a member's interest in BMA Ventures, both BMA Ventures itself and the other members have

- 7 -

the option to purchase the interest that is to be sold. The question, then, is the effect that rejection of the Operating Agreement would have on these provisions and the estate's interest in BMA Ventures.

"[T]he rejection of an executory contract . . . constitutes a breach of such contract . . . immediately before the date of the filing of the petition[.]" 11 U.S.C. §365(g)(1). Rejection does not result in the termination or rescission of a contract, but it frees the bankruptcy estate from any obligations under that contract. *In re Eckberg*, 446 B.R. 909, 915 (Bankr. C.D. Ill. 2011) (Perkins, J.). Whatever rights the parties possess post-rejection are "governed by the terms of the contract and ordinary principles of state law." *Id.* Thus, the rejection of an LLC operating agreement does not invalidate the provisions in that agreement that allocate each member's share of the interests in the LLC. *In re Strata Title, LLC*, 2013 WL 2456399, at *3 (Bankr. D. Ariz. June 6, 2013). Rejection of the Operating Agreement would therefore not change the fact that the estate owns a property interest in BMA Ventures.

Although the provisions of an operating agreement may alter the rights associated with an ownership interest in an LLC, the interest itself is not created by the operating agreement. Terminating the Operating Agreement would not terminate BMA Ventures or any member's property interest in it. *See Sullivan v. Mathew*, 2015 WL 1509794, at *5, *8 (N.D. Ill. Mar. 30, 2015) (distinguishing management rights arising from a partnership agreement from property rights in

the partnership itself). In the absence of an operating agreement, the default provisions of the LLC Act apply, which, at least in theory, could actually expand the Trustee's powers with respect to the estate's interest in BMA Ventures.

BMA Ventures says that it needs a decision about whether the Operating Agreement is executory in order to avoid uncertainty in the ongoing operation of its business. It is difficult to understand, however, how obtaining a judgment that a 20% membership interest in BMA Ventures is not subject to the Operating Agreement when all other interests remain subject to the Operating Agreement would bring certainty to the business planning and development of BMA Ventures. This is particularly true when, as an alternative remedy, BMA Ventures makes a strong pitch that the Trustee must be bound by the sale restrictions contained in the Operating Agreement.[2] But BMA Ventures' lack of clear purpose in bringing the complaint is not dispositive of the analysis of the issues presented. Those issues stand on their own merits and will be addressed accordingly.

### C. Applicability of § 365 to the Operating Agreement

In Count I, BMA Ventures asks for a declaration that the Operating Agreement is an executory contract subject to §365 of the Bankruptcy Code. 11

---

[2] The Trustee's position is equally confusing. He vigorously argued that the Operating Agreement is not an executory contract, and therefore remains in full force and effect, but then asserted that he is not bound by or subject to the terms of the Operating Agreement.

U.S.C. §365. The Bankruptcy Code does not define the term "executory contract."
The Seventh Circuit, however, generally applies the "Countryman" definition,
which states that a contract is executory if "the obligation of both the bankrupt
and the other party are so far unperformed that the failure of either to complete
performance would constitute a material breach excusing performance of the
other." *Mitchell v. Streets (In re Streets & Beard Farm Partnership)*, 882 F.2d 233,
235 (7th Cir. 1989) (quoting Vern Countryman, *Executory Contracts in Bankruptcy:
Part I*, 57 MINN. L. REV. 439, 460 (1974)). The Seventh Circuit construes the term
"executory contract" narrowly, noting that "[w]hile almost all agreements to some
degree involve unperformed obligation[s] on either side, such an expansive
definition of the term 'executory' is not what Congress enacted through its choice
of language in § 365." *Gouveia v. Tazbir*, 37 F.3d 295, 298-99 (7th Cir. 1994)
(citation omitted).

LLC operating agreements are analyzed on a case-by-case basis to
determine if they contain sufficient unperformed obligations to require treatment
as executory contracts. *Meiburger v. Endeka Enterprises, L.L.C. (In re Tsiaoushis)*,
383 B.R. 616, 620 (Bankr. E.D. Va. 2007). Operating agreements often contain
standard provisions potentially requiring members to take some future, contingent
act, such as indemnifying the LLC for tax liabilities, making future capital
contributions to the LLC, or voting on substantial transactions involving the LLC.
*See In re Capital Acquisitions & Mgmt. Corp.*, 341 B.R. 632, 636 (Bankr. N.D. Ill.

2006). Such hypothetical, remote, or speculative obligations are generally insufficient to require treating an operating agreement as an executory contract. *Tsiaoushis*, 383 B.R. at 619. Rather, a debtor must have substantial, current, unperformed obligations if an operating agreement is to be treated as an executory contract. *Id.* For example, an operating agreement is executory as to a debtor where the debtor is obligated to provide services as a general contractor for an ongoing real estate development project conducted through the LLC. *Matter of Daugherty Construction, Inc.*, 188 B.R. 607, 612 (Bankr. D. Neb. 1995). An operating agreement can also be executory if the debtor has an important role in the management of the LLC. *Capital Acquisitions*, 341 B.R. at 637.

Count I turns on whether the Operating Agreement contains current, material obligations between the Debtor and BMA Ventures. In support of its motion, BMA Ventures offers the declaration of Rod Burkett, one of the managing members of BMA Ventures, as well as the Operating Agreement itself. Mr. Burkett's declaration primarily offers his interpretation of the provisions of the Operating Agreement. However, the interpretation of an LLC operating agreement is a question of law for a court to decide. *See Ocean Tomo, LLC v. Barney*, 2013 WL 4804980, at *5 (N.D. Ill. Sept. 9, 2013) (applying Illinois contract law principles to interpret an LLC operating agreement); *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462, 706 N.E.2d 882, 884 (1999) (stating that unambiguous contracts are to be interpreted without reference to extrinsic evidence). The

relevant provisions of the Operating Agreement are unambiguous, so the document speaks for itself; Mr. Burkett's interpretation of those provisions is irrelevant.

Looking to the Operating Agreement itself, it is clear that it is not an executory contract. First, the Debtor did not have an important role in managing BMA Ventures at the time he filed bankruptcy. Under Article VIII of the Operating Agreement, day-to-day management decisions are made only by appointed managers. Although the Debtor was once a manager of BMA Ventures, he was removed from that position in 2012—two years before he filed his bankruptcy petition.

Members of BMA Ventures who are not appointed managers have no right to participate in the company's management, except that they have the right to vote at meetings and on substantial transactions requiring unanimous consent of the company's members. However, these are rights, not obligations, and the Operating Agreement provides no consequences for a member's failure or refusal to vote. Moreover, there is no evidence that any such transactions are contemplated. Even if the voting rights were material obligations, they would be too remote or hypothetical to justify treating the Operating Agreement as an executory contract.

Similarly, Mr. Burkett's declaration states, without reference to the Operating Agreement, that members of BMA Ventures are required to attend

-12-

meetings when they are called. This is insufficient to treat the Operating Agreement as an executory contract. It is a hypothetical future obligation in that the Operating Agreement does not require BMA Ventures' managers to call meetings except in their own discretion. Further, there is no indication that this obligation, if it actually exists, is material. That is, if a member of BMA Ventures was unable to or refused to attend meetings, nothing in the Operating Agreement or Illinois law would permit BMA Ventures to terminate its obligations as to that member.

BMA Ventures also suggests that the restrictions on the transfer of members' interests in BMA Ventures, contained in Article IX of the Operating Agreement, are material obligations. Although this may be true, as no sale is pending, the hypothetical possibility of a sale does not make the Operating Agreement executory.

A number of the supposed duties noted by BMA Ventures are merely BMA Ventures' routine accounting obligations. For example, section 4.2(a) of the Operating Agreement requires BMA Ventures to maintain a separate capital account for each LLC member in accordance with applicable Treasury Regulations. Section 4.2(b) provides that the capital accounts must be recalculated based on capital contributions or allocations for BMA Ventures' profits or losses. But these obligations are BMA Ventures' obligations, and they do not establish that the Operating Agreement is executory as to its members.

Finally, many of the obligations noted by Mr. Burkett and BMA Ventures simply do not exist in the Operating Agreement. For example, Mr. Burkett claims that members may be called upon to make additional capital contributions to BMA Ventures. However, section 4.1(b) of the Operating Agreement, which is the provision cited for that proposition, only states that members have the right to purchase additional interests in BMA Ventures in the event the managers decide to raise more capital. Similarly, Mr. Burkett inaccurately states that members of BMA Ventures are "responsible for paying their proportionate share of the Illinois Replacement Tax Savings." But section 6.4 of the Operating Agreement provides only that BMA Ventures must reimburse members for any amount of the Illinois Personal Property Replacement Tax that would have been imposed on the company were it not imposed on the members directly; it does not obligate members to pay anything on behalf of the company. Further, section 4.6 of the Operating Agreement specifically states that members of BMA Ventures have no personal liability for taxes that are incurred by the company.

The text of the Operating Agreement, not Mr. Burkett's interpretation of it, establishes what obligations bind members of BMA Ventures, and there is no genuine dispute as to the contents of the Operating Agreement. Non-managing members owe no material duties to BMA Ventures. The Debtor was not in a managerial role in BMA Ventures, and whatever other obligations he may have had are not material. The Operating Agreement is therefore not an executory

contract that could be assumed or rejected pursuant to §365. Thus, BMA

Ventures is not entitled to summary judgment on Count I of its complaint.

Because the Operating Agreement is not an executory contract, it is not subject

to the automatic rejection provision of §365(d)(1). 11 U.S.C. §365(d)(1). BMA

Ventures' Motion for Summary Judgment must therefore be denied as to Count

II as well.


### D. Whether the Operating Agreement Binds the Trustee

As an alternative to judgment on Counts I and II, BMA Ventures seeks a

declaration that the Trustee is bound by the provisions of the Operating

Agreement, particularly those relating to the sale or disposition of a member's

interest in BMA Ventures. BMA Ventures correctly notes that, as a general matter,

"a bankruptcy trustee succeeds only to the title and rights in property that the

debtor had at the time" of the bankruptcy filing. *Matter of Sanders*, 969 F.2d 591,

593 (7th Cir. 1992). "Filing a bankruptcy petition does not expand or change a

debtor's interest in an asset; it merely changes the party who holds that interest."

*Id.* "Further, a trustee takes the property subject to the same restrictions that

existed at the commencement of the case." *Id.* "To the extent an interest is limited

in the hands of a debtor, it is equally limited as property of the estate." Id.

(citations omitted).

The Trustee argues in response that the sale provisions in the Operating

Agreement are void as impermissible *ipso facto* clauses under §541(c)(1), which

provides, in pertinent part:

> [A]n interest of the debtor in property becomes property of the estate
> . . . notwithstanding any provision in an agreement, transfer
> instrument, or applicable nonbankruptcy law—(A) that restricts or
> conditions transfer of such interest by the debtor; or (B) that is
> conditioned on the insolvency or financial condition of the debtor, on
> the commencement of a case under this title, or on the appointment
> of or taking possession by a trustee in a case under this title or a
> custodian before such commencement, and that effects or gives an
> option to effect a forfeiture, modification, or termination of the
> debtor's interest in property.

11 U.S.C. §541(c)(1). Under this section of the Code, a debtor's interest in an LLC

becomes property of the estate even though some provision of the operating

agreement or nonbankruptcy law would otherwise prevent the transfer. *LaHood*

*v. Covey (In re LaHood)*, 437 B.R. 330, 336 (C.D. Ill. 2010). Thus, the Trustee

undoubtedly received the Debtor's entire interest in BMA Ventures even though

provisions of the Operating Agreement purport to modify that interest if a member

files for bankruptcy.

But §541(c)(1) does no more than that. "By its plain terms, §541(c) governs

what interests 'become[] property of the estate.' Congress enacted §541(c) to

eliminate barriers to the transfer of property into the estate, and not to void

restrictions on the transfer of property from the trustee to third parties. Simply

stated, nothing in the language of §541(c)(1) addresses, much less authorizes, the

transfer by the trustee of assets that are subject to prohibitions or restrictions on

transfer." *Caymus Ventures, LLC v. Jundanian (In re Jundanian)*, 2012 WL

1098544, at *6 (Bankr. D. Md. Mar. 30, 2012) (citations omitted). Pursuant to §541, a Chapter 7 trustee steps into the debtor's shoes as an LLC member and succeeds to all rights and obligations under an LLC operating agreement. *See Sheehan v. Warner (In re Warner)*, 480 B.R. 641, 656 (Bankr. N.D.W.Va. 2012). "Section 541(c)(1) does not operate to define the bundle of rights that go with property." *Id.* Nor does it expand a trustee's rights beyond those held by the debtor. *Id.*; *Sullivan v. Paul (In re Paul)*, 355 B.R. 64, 67 (Bankr. N.D. Ill. 2001). Section 541(c)(1) therefore does not provide authority for the Trustee to sell the estate's interest in BMA Ventures free of the constraints of the Operating Agreement.

This does not mean, however, that the Trustee would necessarily be bound by all of the sale restrictions in the Operating Agreement. For example, §363(f) of the Bankruptcy Code permits the sale of estate property free and clear of certain interests in property under specified conditions. 11 U.S.C. §363(f); *see Precision Indus., Inc. v. Qualitech Steel SBQ, LLC (In re Qualitech Steel Corp.)*, 327 F.3d 537, 545 (7th Cir. 2003) (defining "interest" in property). Additionally, unreasonable restraints on alienation may simply be unenforceable as a matter of state law. *See Banning Lewis Ranch Co. v. City of Colorado Springs (In re Banning Lewis Ranch Co.)*, 532 B.R. 335, 348 (Bankr. D. Colo. 2015) (evaluating restraint on alienation under Colorado law); *see generally Gale v. York Center Community Coop., Inc.*, 21 Ill. 2d 86, 91-93, 171 N.E.2d 30, 32-33 (1960). Notwithstanding these potential

remedies, it should also be noted that sale restrictions in LLC operating agreements are generally enforced in bankruptcy where they do not significantly impair a trustee's ability to obtain the fair market value of the estate's interest in the LLC. *E.g.*, *Capital Acquisitions*, 341 B.R. at 637; *Northrop Grumman Technical Servs., Inc. v. Shaw Group Inc. (In re IT Group, Inc.)*, 302 B.R. 483, 488 (D. Del. 2003).

Count III cannot be resolved at this time, however, because it is not ripe for determination. The Judicial Code provides: "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a). Subject-matter jurisdiction under this statute is limited to a justiciable case or controversy, which means there "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Official Creditors' Committee of Products Liability and Personal Injury Claimants v. Int'l Insurance Co. (In re Pettibone Corp.)*, 121 B.R. 801, 805 (Bankr. N.D. Ill. 1990) (quoting *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).

"[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Wisconsin Central, Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). This question is "necessarily one of degree" and it must be analyzed on a case-by-case basis. *Central States, Southeast & Southwest Areas Health & Welfare Fund v. American Int'l Group, Inc.*, 840 F.3d 448, 451 (7th Cir. 2016).

There is not yet a justiciable controversy between BMA Ventures and the Trustee as suggested in Count III. The docket in the Debtor's main bankruptcy case does not reflect that the Trustee has taken any steps to sell the estate's interest in BMA Ventures. The Trustee has not filed a notice of intent to sell, a motion to sell free and clear of interests, a motion to approve sale procedures, or even an application to employ a broker to market the estate's interest in BMA Ventures. Until the Trustee takes some action, it is impossible to know whether or to what extent he will actually attempt to act beyond the constraints of the Operating Agreement. Put another way, there is not yet sufficient "immediacy and reality" to the Trustee's hypothetical sale of the estate's interest in BMA Ventures.

If in the future the Trustee proposes to sell the estate's interest in BMA Ventures, and if an objection is filed by BMA Ventures or another party in interest, the Court will look at the particular provisions of the Operating Agreement, if any, that the Trustee seeks to circumvent and determine whether the Trustee's

-19-

proposed course of action is permitted under the Bankruptcy Code or other applicable law. But entering judgment at this time would essentially require the Court to analyze every potential sale term the Trustee could propose and opine as to the appropriateness of each one. That would not be a proper use of judicial resources or the declaratory judgment remedy. Because there is not yet a justiciable controversy between BMA Ventures and the Trustee, summary judgment must be denied as to Count III.

## IV. Conclusion

Counts I and II of BMA Ventures' complaint turn on whether the BMA Ventures' Operating Agreement is an executory contract. Because the Operating Agreement does not contain the types of material obligations that render an agreement executory, BMA Ventures is not entitled to summary judgment in its favor on these counts. As to Count III, the Court does not have subject-matter jurisdiction to resolve the parties' dispute, as their disagreement is based on a number of undefined future hypothetical scenarios. BMA Ventures' Motion for Summary Judgment must therefore be denied in its entirety.

Based on the undisputed facts offered by BMA Ventures, the Court found, as a matter of law, that the Operating Agreement is not an executory contract. Thus, it may be appropriate to not just deny BMA Ventures' motion but also to enter judgment in favor of the Trustee on Counts I and II. The Trustee, however,

did not file a cross-motion for summary judgment or ask for the entry of judgment in his favor in his response. Rule 56(f) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, requires a court to give notice and a reasonable opportunity to respond prior to entering summary judgment in favor of a nonmovant. Fed. R. Civ. P. 56(f); Fed. R. Bankr. P. 7056.

Additionally, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see* Fed. R. Bankr. P. 7012(b). Because the Court has determined that Count III does not present a justiciable case or controversy, the Court must dismiss that count for lack of subject-matter jurisdiction. However, as with entering summary judgment for a nonmovant, when *sua sponte* dismissing a claim for lack of subject-matter jurisdiction, courts are generally required to give notice to the affected parties and an opportunity to respond. *Stewart Title Guaranty Co. v. Cadle Co.*, 74 F.3d 835, 836 (7th Cir. 1996).

BMA Ventures and the Trustee are now on notice of the Court's proposed intent to enter judgment for the Trustee on Counts I and II of BMA Ventures' complaint and to dismiss Count III for lack of subject-matter jurisdiction. The Court will not do so, however, until the parties have had an opportunity to respond in the manner described in the Order accompanying this Opinion.

This Opinion is to serve as Findings of Fact and Conclusions of Law

pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###